IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| In re: | } | |
|---|---|---|
| Amy L. Simmons, | } | Case No. 18-41281-JJR13 |
|     Debtor. | } | |
| Amy L. Simmons, | } | |
|     Plaintiff, | } | |
| v. | } | AP No. 22-40021-JJR |
| Pingora Loan Servicing, LLC, | } | |
|     Defendant. | } | |

## OPINION

**Introduction.** In this proceeding, the court must determine whether Alabama's common fund doctrine applies to compel a mortgage company to reduce its payoff by a pro rata share of the attorney fees owing from the Debtor to her attorney for work that resulted in a settlement between the Debtor (on behalf of her bankruptcy estate) and her homeowner's insurance company resulting from fire damage to the mortgaged property. For the reasons that follow, the court finds that the common fund doctrine does not apply to the debtor-creditor relationship between the Debtor and the mortgage company, and that the mortgage payoff should not be reduced by any portion of the attorney fees owing to Debtor's counsel.

**Jurisdiction.** This court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. Determining the allowance of the mortgagee's claim and the extent of the mortgagee's lien against the estate's settlement proceeds is a core proceeding under 28 U.S.C. § 157(b)(2). In addition to the core nature of this proceeding as the basis for the court's jurisdiction, the parties have consented to the court's entry of final orders, subject to normal

1

appellate review, by fully participating in this adversary proceeding including briefing and oral argument, each seeking a final order and without raising any jurisdictional issue. Therefore, the court has authority to enter a final order.

**Procedural Background.** This adversary proceeding seeks a determination that the insurance settlement between the Debtor and her homeowner's insurance company, Metropolitan Property and Casualty Insurance Company ("MetLife"), created a common fund benefiting not only the Debtor (and consequently her estate as the funds remain estate property at this time) but also benefiting her mortgage company, Pingora Loan Servicing, LLC as serviced by Flagstar Bank, FSB (herein "Pingora"), because the funds will be used to pay the Debtor's mortgage debt owed to Pingora. Therefore, the Debtor submits that Pingora should contribute to her attorney's fees incurred in connection with the MetLife settlement by reducing its payoff by one-third, which would be a reduction of $34,478.05 according to the Debtor's complaint. Alternatively, the complaint asks that the Debtor be allowed to surrender the mortgaged property to Pingora and that Pingora be forced to credit her account the premiums paid by Pingora for force placed insurance, which the Debtor claims was unnecessary because her property was a total loss.[1]

Pingora did not answer the complaint but instead moved to dismiss the adversary proceeding on grounds that the complaint failed to state a claim for which relief could be granted

---

[1] In addition to filing the adversary proceeding, the Debtor objected to Pingora's amended proof of claim 11, and to a notice of payment change dated January 23, 2023. (BK Doc. 124, objecting to claim 11 as amended on the grounds that the AP may reduce the amount owed; and BK Doc. 152, objecting to the notice of mortgage payment change saying it was not owed.) The Trustee filed a motion to modify the Debtor's chapter 13 plan to provide for the payment of Pingora's amended claim with the MetLife insurance proceeds and the Debtor objected to the proposed modification. (BK Docs. 131, 134.) The court consolidated the Debtor's objection to Pingora's proof of claim and notice of payment change with the adversary proceeding, and the outcome of the Trustee's modification and the Debtor's objection thereto will also be determined by the court's ruling on the attorney fee and proof of claim issues herein.

without further explanation. (AP Doc. 18.) As briefed and argued, the motion to dismiss was aimed solely at the common fund argument upon which the attempt to reduce its lien was premised. The court treated Pingora's Motion to Dismiss as a motion for summary judgment pursuant to Rule 7012(b) of the Fed. R. Bankr. P., which incorporates Rule 12(d) of the Fed. R. Civ. P. and gave the parties reasonable opportunity to submit all pertinent material for consideration under that Rule. The parties have submitted briefs and undisputed evidentiary submissions to supplement the initial pleadings, including the MetLife policy and correspondence related to the settlement. The court finds that the common fund doctrine does not apply to the debtor-creditor relationship between the parties, and summary judgment in favor of Pingora is due to be granted.

**Undisputed Facts.** The Debtor filed this chapter 13 case in the summer of 2018. Her confirmed plan required her to pay her home mortgage directly to Flagstar Bank as servicer for Pingora with no arrears as a long-term principal-residence mortgage protected by the antimodification provision of Bankr. Code § 1322(b)(2). (BK Doc. 30.) The Debtor had a homeowner's casualty policy with MetLife. The MetLife policy contained a standard New York mortgagee clause at page H-2, and provided in part, "If a mortgagee is named in the Declarations, any payment for loss under Coverage A or B [Dwelling or Private Structures] will be made to the mortgagee to the extent of its interest under all present and future mortgages. . . . The interest of the mortgagee under this policy will not be affected by any action or neglect by you." The declarations page listed Flagstar as the mortgagee. (AP Doc. 43 Ex. A.)

In the late fall of 2019, the Debtor's home suffered fire damage. Nothing was filed in the bankruptcy case until January 17, 2020, when the Debtor amended Schedule A/B to increase the value of her personal property and to detail the value of additional items including jewelry and furniture. The real property value remained as originally scheduled. (BK Doc. 48.) A few months

Case 18-41281-JJR13    Doc 156    Filed 04/04/23    Entered 04/04/23 10:44:54    Desc
Main Document    Page 3 of 10

later, in May 2020, Pingora filed a notice that the mortgage was being placed in forbearance for a period of six months at the Debtor's request due to the COVID-19 emergency. (BK Doc. 54.) Nine months later, Pingora moved for relief from the automatic stay reciting the continued failure of the Debtor to pay the monthly mortgage installments (and including a request to lift the co-obligor stay as to the Debtor's husband, who was on the mortgage but not personally liable on the note). (BK Doc. 56.) The motion for relief was continued by agreement for several months before being withdrawn. (BK Doc. 78.)

In the meantime, the Debtor again amended her schedules, eliminating much of her personal property but adding a potential lawsuit relating to insurance proceeds for the damaged home. (BK Doc. 74.) The Trustee also moved to employ Debtor's special counsel to represent the estate in pursuing the Debtor's lawsuit against MetLife for its failure to pay her fire-loss claim. Pingora submitted a letter dated April 22, 2020 (AP Doc. 37 Ex. 1), which confirmed that it was aware of the fire by that time, and which included information for how the Debtor could coordinate with Pingora to make repairs to the structure. Pingora also force placed casualty insurance coverage on the mortgaged property and notified the Debtor of the same by letter dated July 22, 2020. (AP Doc. 37 Ex. 3.)

In response to the July 2020 letter, the Debtor's special counsel by letter dated August 4, 2020, informed Pingora that the Debtor had made a claim under the MetLife policy for the structure, contents, and living expenses, all of which remained unpaid. (AP Doc. 43 Ex. B.) The letter asked Pingora not to provide force placed coverage as doing so would only complicate matters (and reciting that MetLife refunded the Debtor's premium she paid after the fire, telling her it believed no insurable interest remained). The letter assured Pingora, "I will certainly protect your lenders payoff should MetLife eventually agree to pay this claim. However, for now my client

4

is unable to pay on a loan that should have been paid in full months ago." Pingora continued the force placed coverage and it is unclear if it did so because it believed an insurable interest remained or for some other reason. MetLife continued its refusal to pay any aspect of the claim, and the Debtor sued MetLife in state court in November 2020. The suit was removed to federal court.

The Debtor asked Pingora to join the suit, but it failed to do so. There was no evidence explaining why MetLife initially refused to honor the Debtor's fire-loss claim, at least as to the structure. The Debtor submitted an email from special counsel to Pingora's bankruptcy counsel dated July 13, 2021, after Pingora's motion for relief had been pending and continued in this court for several months. In that letter, Debtor's special counsel updated Pingora's bankruptcy counsel on the status of the coverage suit, which was awaiting mediation at that time, and explained in part:

> Would love to have Flagstar join as we have tried to get them to at least pay the house loss value which both pays the debt and gives [the Debtor] equity. Their argument is her personal property claims based upon her original chapter 13 bankruptcy filing. They claim estopell [sic] because her original bankruptcy filing showed less than $10,000.00 personal property while her proof of loss claim is in excess of $100,000.00. Please provide me the current payoff as well as per diem interest and I will address the Flagstar debt should we move towards settlement. We fully understand the mortgage is a debt due. When a mediator is selected and a date determined I will let you know.

(AP Doc. 43 Ex. C.)

Eventually, the suit between the Debtor and MetLife settled while the chapter 13 case was still active, and the settlement proceeds thus became property of the bankruptcy estate. The Debtor filed a Motion to Approve Settlement (BK Doc. 91) reciting that the suit was settling for $220,000.00 and reciting that the mortgage balance would be paid in full out of the settlement

5

funds. The settlement amount was not itemized to indicate what amounts were for structure, personal property, or loss of use.[2]

Special counsel also included a proviso in the Motion to Approve Settlement that acknowledged the obligation to pay the mortgage in full out of the settlement funds but indicated he would seek a pro rata contribution toward his attorney fees from Pingora under the common fund doctrine. This court approved the settlement with MetLife, and approved special counsel's fees and expenses, but did not approve the request to assess a pro rata share of the fees against Pingora, on grounds that the relief against Pingora, seeking to reduce its lien by the fee proration, must be brought by adversary proceeding and not merely as a request in a settlement motion or fee application. (BK Docs. 105, 121.)

Pingora then amended its claim to what it contended was the full payoff under the contract (claim 11-2 now filed as $124,170.99 secured) and the Trustee moved to modify the plan (BK Doc. 131) to pay that amount from the settlement proceeds as required by the express terms of the settlement agreement. The parties agreed that the trustee could pay special counsel his allowed fee and expenses totaling $75,356.43 from the settlement funds, and could pay the undisputed portion of Pingora's claim, but the Trustee is holding the remainder of the funds pending the court's ruling in this proceeding.[3] The Debtor is seeking, through this proceeding, to invoke the common fund

---

[2] The Debtor submitted an email exchange between special counsel and counsel for MetLife (AP Doc. 43 Ex. E), in which MetLife's counsel on June 26, 2022, wrote, "This will confirm our telephone conversation that this case is settled with my client paying $220,000 into the bankruptcy court, unless otherwise ordered by the Court, in return for your client paying the mortgage company and providing my client with a full release and her dismissing this case with prejudice, assuming she receives the approval of the bankruptcy court." Special counsel then replied on June 27, 2022, "Yes that is correct with the understanding the amount paid is to cover the mortgage/debt but I will be requesting the mortgage company pay pro rata attorney fees from the common fund created. I appreciate the fact we were able to resolve this case." (*Id.*)

[3] The Debtor's chapter 13 plan had already paid all other claims in full, so the Trustee will refund to the Debtor whatever settlement funds remain after paying Pingora and any associated

doctrine to compel Pingora to contribute to the attorney fees awarded to special counsel for settling the coverage issue with MetLife by reducing its payoff by one-third and thereby reducing the claim secured by its lien by that same amount (essentially reimbursing the Debtor for attorney fees to that extent, which is $34,478.05 ).[4] The court finds that the common fund doctrine does not apply to this scenario.

**Alabama's Common Fund Doctrine**. In Alabama, a standard "New York mortgagee clause" creates a separate contract between the insurance company and the mortgagee. *See Norwest Mortg. v. Nationwide Mut. Fire Ins. Co.,* 718 So. 2d 15, 17 (Ala. 1998). "The mortgagee has the first right to the insurance proceeds to the extent of the amount owing it by the insured, not exceeding the total liability of the insurer under the policy; and the insured is entitled to the balance of the amount of such lability." *Standard Fire Ins. Co. v. Knowles*, 129 F. Supp. 3d 1271, 1278 (N.D. Ala. 2015) (quoting *Ala. Farm Bureau Mut. Cas. Ins. Co. v. Williams*, 530 So. 2d 1371, 1374 (Ala. 1988)). The Debtor's policy with MetLife contained just such a standard New York mortgagee clause and protected the mortgagee's right to payment regardless of whether it paid a claim made by the Debtor.

The "common fund" doctrine allows a court to impose an equitable obligation on a non-client to pay a portion of an attorney's fees when the attorney's services on behalf of the client created a fund to which the non-client also has a claim. The doctrine's application has been limited to scenarios such as "cases for the protection of trusts, for the protection of a decedent's estate,

---

trustee fees. Even if Pingora is paid the full amount it is requesting to satisfy its lien without a deduction for attorney fees, there will be excess funds. The bottom-line issue here is how much of the remaining settlement funds go to Pingora and how much to the Debtor.

[4] The logic of reducing the payoff by one-third is not clear and would have Pingora paying 45.75% of the attorney fees awarded to special counsel. In any event, it is not necessary to calculate any proration as the court is ruling in Pingora's favor on the common fund issue.

7

actions where one creditor acted to the benefit of other creditors, and actions by stockholders for corporate waste and the recovery of corporate property [as well as] insurance subrogation cases." *Knowles,* 129 F. Supp. 3d at 1279 (quoting *Henley & Clarke v. Blue Cross-Blue Shield of Ala.*, 434 So. 2d 274, 276 (Ala. Civ. App. 1983)).

The common fund doctrine has no application, however, in the context of a debtor-creditor relationship as exists between the Debtor and Pingora. Alabama law is explicit and unequivocal on this point: "The common-fund doctrine has no application when the relationship between the attorney's client and the party sought to be charged with the attorney fee is one of debtor and creditor." *Gov't Employees Ins. Co. v. Capulli*, 859 So. 2d 1115, 1121 (Ala Civ. App. 2002); *accord Mitchell v. State Farm Mut. Auto. Ins. Co. (Ex parte State Farm Mut. Auto. Ins. Co.)*, 118 So. 3d 699, 707 (Ala. 2012) (quoting and discussing *Capulli* and agreeing the common fund doctrine has no application within a debtor-creditor relationship, as opposed to a subrogor-subrogee relationship). The reason for this distinction, which is "almost uniformly acknowledged" in other states' jurisprudence as well, is the fact that "unlike a subrogated insurer, the creditor's right to payment of its claim [is] not contingent on the client-debtor's recovery of a 'fund' from which the creditor could receive payment." *Capulli*, 859 So. 2d at 1121. The creditor in no way stands in the debtor's shoes but is owed its debt regardless of whether the debtor recovers from a third party. *Id.* There is no direct benefit to the creditor from the creation of the fund that will be used to pay its debt, because it was owed its debt regardless of whether the fund existed. *See Knowles*, 129 F. Supp. 3d at 1287 (applying Alabama law and finding that litigation between an insured debtor and an insurance company resulting in funds from which the debtor paid a contractual debt to a creditor only incidentally benefited the creditor because the creditor was entitled to payment on the contract regardless of the source of those funds, which also explains

why the common fund doctrine never applies to the debtor-creditor relationship: the benefit will always be incidental because the debt is owed regardless of the debtor's recovery from the insurer).

The Debtor acknowledged the mortgage debt must be paid, and assured MetLife it would do so as part of the settlement. That debt is owed regardless of whether the Debtor pays it from insurance proceeds or otherwise. Additionally, Pingora's right to full payment before its lien can be ordered released is a right that cannot be modified in chapter 13 because the mortgage is protected under the antimodification provision of Bankruptcy Code § 1322(b)(2). *See Mortgage Corp. of the South v. Bozeman (In re Bozeman)*, 57 F.4th 895 (11th Cir. 2023) (chapter 13 plan cannot modify mortgagee's right to full payment if the mortgagee holds a long-term primary residence mortgage as described in § 1322(b)(2)). The Debtor has pointed to nothing in the mortgage documents that would require Pingora to file its own claim or to contribute to attorney fees for pursuing the claim filed by the Debtor, and as the Debtor recognized in her second brief in response to Pingora's Motion to Dismiss (AP Doc. 43), "[i]f Flagstar believes they have not been paid in full, they may foreclose or file a breach of contract action against Simmons." As in *Knowles* and the cases cited therein, Pingora was not benefited by the settlement proceeds other than indirectly because it was entitled to full payment from the Debtor regardless of whether the insurance company paid the Debtor's claim.[5] The pre-existing legal right to payment regardless of the source of the funds is the reason such relationships do not fall under the equitable common fund doctrine under the circumstances of this case.

---

[5] It is also true that under the New York mortgagee clause, the insurance proceeds belonged, first and foremost, to Pingora as its interests appeared and MetLife was contractually obligated to Pingora to pay it first if a claim was made for loss to the structure under the policy, apart from its dispute over the claim with the Debtor and without Pingora having to take any action to join the Debtor's suit. This is likely the reason MetLife required payment of the mortgage debt in full as a condition of settlement, as evidenced in the email and settlement and release agreement.

**Conclusion.** In summary, under Alabama law, the common fund doctrine does not apply to the debtor-creditor relationship between the Debtor and Pingora. The settlement proceeds were not a "fund" created for the benefit of the Debtor and Pingora. The settlement proceeds were instead contractually obligated first to Pingora, to the extent of its interests, and the Debtor's obligation to pay the mortgage debt existed independently of the settlement proceeds—she would owe the debt even if no insurance claim had ever been filed. It was no direct benefit to Pingora that the Debtor secured a victory in her suit against MetLife—Pingora was contractually owed any insurance proceeds paid by MetLife to the extent of its interests under the mortgagee clause (no matter the expense the Debtor incurred to pursue that claim) and Pingora was owed its full mortgage debt from the Debtor (whether an insurance claim existed or not). Summary judgment in favor of Pingora is appropriate and will be entered by separate order.

To the extent the Complaint raises any other issues aside from the request for attorney fee proration based on the common fund doctrine, those claims are also denied as no evidence or briefing to support any such claim has been submitted. A separate order in conformity with this opinion will be entered.

Done this 4th day of April 2023.

/s/ James J. Robinson
James J. Robinson
U.S. Bankruptcy Judge

10

Case 18-41281-JJR13    Doc 156    Filed 04/04/23    Entered 04/04/23 10:44:54    Desc
Main Document    Page 10 of 10